UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

STEPHEN PARKER,                          )
                                         )
           Plaintiff,                    )           Civil Case No. CV-06-129-GZS
                                         )
v.                                       )
                                         )
CITY OF SOUTH PORTLAND, et al.,          )
                                         )
           Defendants                    )

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT
OF MOTION FOR SUMMARY JUDGMENT**

In their Motion for Summary Judgment and Statement Of Material Facts Not In

Dispute, Defendants have tried to show the court, through their testimony and the actual

video recording of the arrest and use of force to effect it, the totality of the circumstances

that justified the use of an electronic control device (a Taser) against Plaintiff to

overcome his physical resistance to being handcuffed and taken into custody after his

arrest for operating a motor vehicle while under the influence of alcohol.  The video

shows a large, muscular man (5'8" 220 pounds),  who is visibly intoxicated,

uncooperative, hostile, challenging and belligerent toward the police officers by his use

of both obscene language and physical gestures.  When advised by Officer Gerrish that

he was under arrest for OUI and instructed to put his hands behind him for handcuffing,

Plaintiff instead locked his arms across his chest defiantly and *actively and physically

resisted* Officer Gerrish's attempt to pull his left arm behind him to force compliance

with those instructions.

When Officer Gerrish pulled out his Taser and pointed it at Plaintiff while

simultaneously asking Officer Caldwell to perform the handcuffing in response to

Plaintiff's physical resistance, Plaintiff feigns at being compliant by forcefully grabbing his right wrist with his left hand behind his back while turning around. While appearing at first glance to be complying, it becomes clear that Officer Caldwell cannot complete the handcuffing because Plaintiff refuses to comply with instructions to let go of his right wrist so a handcuff could be put on it, and then physically resists Caldwell's efforts to pull his hands apart so he can complete the handcuffing. Plaintiff has admitted this physical resistance to Officer Caldwell's efforts to pry his hands apart. *See* SMF at ¶ 123 and cited testimony therein. When Plaintiff finally does let go, it is not to give up his right hand to Caldwell, but to try to pull it away from him while Caldwell tries to hang onto it. When Officer Gerrish sees Plaintiff's resistance pulling Caldwell off balance, in light of his own experience with Plaintiff to this point, he immediately deploys the Taser before the potentially violent situation deteriorates further and requires additional force, including possible other weapons, against Plaintiff. Defendants contend that, under the totality of the circumstances, including Plaintiff's repeated acts of physical resistance to being taken into custody, the use of the Taser was objectively reasonable and not in violation of any clearly established law. *See Graham v. Connor,* 490 U.S. 386 (1989).

In response, Plaintiff seeks to use the "omnipresent criticism" of private groups such as Amnesty International and the American Civil Liberties Union against Taser use generally to argue that its specific use under these particularized circumstances was unconstitutional and that the City and its police chief also violated the Constitution by deciding to issue Tasers to its officers, formulating its Taser policy, and allegedly inadequately training its officers on when to use the Taser. The ACLU Taser Study article Plaintiff argues is somehow authoritative on the legal issues presented in this case

2

was not published until September, 2005.  So it was not in existence and has no relevance to any "deliberate indifference" claim arising out of the July 20, 2005 arrest.  Similarly, the policy and training guidelines published by the Police Executive Research Forum, another private, non-governmental group relied on by Plaintiff, were not published until October 25, 2005 and again were not even in existence on the date of arrest.  Quite simply, even if the City of South Portland was inclined to blindly accept model policies intended merely as "guidelines" for its official policy, the cited guidelines could not be used because they were not in existence at the time.  This Court likewise, cannot utilize such post-event critiques or model guidelines in judging the constitutionality of the municipal Defendants' "deliberate indifference" in July 2005 or earlier.

As to the Amnesty International cited by Plaintiff's expert, *see* Affidavit of Jack Ryan at p. 7, and attached downloaded paper from Amnesty International's web site, it appears to be undated.  But all these organizations lend nothing to this Court's analysis of Plaintiff's claim under Fourth Amendment case law.  As one court noted, speaking specifically of Amnesty International:  "Although we do not wish to disparage the work of private investigative bodies in exposing inhumane practices, these organizations may have their own agendas and concerns, and their condemnations are virtually omnipresent."  *M.A. A26851062 v. U.S. Immigration and Naturalization Service*, 899 F.2d 304, 313 (4th Cir. 1990).  The court also stated that it was "uncertain of the criteria by which courts would analyze the reports of private groups," *Id.*, and that using legal standards "based solely on pronouncements of private organizations or the news media is problematic almost to the point of being non-justifiable."  *Id.*

3

Plaintiff's expert also makes many conclusory statements, though the recitation of his training, experience, certifications/qualifications, speaking engagements and/or publications says nothing about any involvement with electronic control weapons like the Taser **at all**. *See, e.g.,* Affidavit of Jack Ryan at ¶¶ 4, 7, 8, 11 & 12. Perhaps this is the reason for his reliance on Amnesty International reports or "model" policies of private organizations like the International Chiefs of Police Association (the model electronic control device policy of the IACP, released in January, 2005, is quoted, in part, by Mr. Ryan, though neither the article itself nor the accompanying "Concepts and Issues Paper" was actually produced by him). *Id*. at ¶ 48. Defendants contend that the opinion at ¶ 48 should be disregarded for that reason, based as it is on a model policy that Mr. Ryan apparently played no role in developing.

If the court considers it, however, then the entire IACP model policy on Electronic Control Weapons of January, 2005 and the accompanying explanatory Concepts and Issues Paper has been filed as an attachment to Defendants' Response to Plaintiff's Statement of Additional Facts. As the Concepts and Issues Paper states: "This paper provides essential background material and supporting documentation to provide greater understanding of the developmental philosophy and implementation requirements for the model policy. This material will be of value to law enforcement executives in their efforts to tailor the model to the requirements and circumstances of their community and their law enforcement agency." *See* Concepts and Issues Paper at p. 1, ¶ I(A). Obviously, it must be remembered that this policy, cited by Mr. Ryan, is a *model,* to be used as a guideline for a police agency to develop its own policy. It has no independent force of law, such that any disagreement between locally adopted policy and the model

4

policy constitutes proof of excessive force or demonstrates deliberate indifference.  This is acknowledged in the policy itself:  "No 'model' policy can meet all the needs of any given law enforcement agency.  Each law enforcement agency operates in a unique environment . . . .  [T]he formulation of specific agency policies must take into account local political and community perspectives and customs, prerogatives and demands, often divergent law enforcement strategies and philosophies; and the impact of varied agency resource capabilities, among other factors."  *See* IACP Model Policy a p. 2 (in lower box).

Regarding claims that Tasers cause excruciating pain and can nearly be classified as cruel and inhuman torture devices, *per se*, by Amnesty International, the ACLU, and Plaintiff, see Memorandum in Opposition at pp. 8-9, they are a non-lethal use of force that is generally seen as the same level of force as the widely used OC (pepper) spray.  "Most police agencies place ECW's at the same level as pepper spray on the force continuum.  Volunteers who have been exposed to pepper spray and ECW's report that pepper spray is the more punishing of the two.  Persons exposed to an ECW will typically recover in seconds or minutes, as compared to a recovery time of almost one hour for pepper spray."  IACP Concepts and Issues Paper at p.3

And while the Model Policy of 2005 does contain language as quoted in Mr. Ryan's affidavit at ¶ 48, which he uses to state the opinion that Taser use was unwarranted unless Mr. Parker was "overtly assaultive," *Id.* at ¶ 49, the phrase is used in a manner the model policy drafters never intended.  The model policy prohibits Taser use unless a person "demonstrates an **overt intention** to use violence or force against the officers . . . **or resists detention and arres**t and other alternatives are not available under

the circumstances.  Normally, violence, force and resistance are demonstrated by **actions, deeds and/or words that signify the intent and ability** to take such actions."  *See* IACP Concepts and Issues Paper at 3(emphasis added).  The Taser should be used only to provide "that level of force that reasonably appears necessary to control or subdue a violent **or potentially violent** person.  **It should also be used early enough in a confrontation or situation to prevent the incident from escalating to a point where a greater level of force might be necessary**."  *Id.*(emphasis added).  It is clear from a review of the IACP model policy and explanatory paper that its view of appropriate Taser use is not limited to situations in which the situation has escalated to the point of "overtly assaultive" conduct by the arrestee.  Its use is sanctioned to prevent exactly that kind of situation, because then the police might need to respond with even greater force.

Defendants further contend that, with all due respect to Mr. Ryan's nearly three year old law degree, it is the function of the court, and not Mr. Ryan, to analyze Fourth Amendment law in the particularized circumstances of this case, and his opinion of the reasonableness of the force, *see e.g.,* affidavit at ¶ 41, must be disregarded by this court. *See Roy v. City of Lewiston*, 1994 U.S. Dist. LEXIS 4686 (disregarding expert's opinion that shortcomings of policy adopted by police department "should have been obvious," because the expert's opinion does not establish "deliberate indifference" under *Canton v. Harris*).  With respect to the expert's opinions regarding the types of equipment he felt should have been issued to police, the *Roy* court stated:  "The federal courts are not in the business of dictating to municipal police departments what equipment must be made available to police officers or in requiring them to be up to date on the newest developments in controlling unruly individuals."  In that case, the defendant police

6

agency was being faulted for not issuing pepper spray to its officers, because it was a new tool designed to deescalate physical confrontations before other, greater uses of force (a knife-wielding Roy was shot, not temporarily incapacitated) might become necessary.  In the instant case, the municipal Defendants are being faulted, to the point of allegedly unconstitutional conduct, for having made a decision to give their officers another, recently introduced tool to hopefully prevent physical confrontations and the odds that police officers and arrestees can get seriously hurt by the greater levels of force that are attendant with such confrontations.  Defendants argue that the caution this Court displayed in Roy regarding not being seen as dictating equipment decisions to municipal police departments, is no less warranted here.

For the reasons stated above and in their original motion, Defendants respectfully request this Court grant summary judgment in their favor as to all counts of Plaintiff's complaint.

Dated at Portland, Maine this 6th day of April 2007.

/s/Edward R. Benjamin, Jr.
Edward R. Benjamin, Jr.
Attorney for Defendants
City of South Portland,
South Portland Police Department,
Edward Googins, Kevin Gerrish,
Jeffrey Caldwell, and Todd Bernard

CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2007 I electronically filed Defendants City of South Portland, South Portland Police Department, Edward Googins, Kevin Gerrish, Jeffrey Caldwell and Todd Bernard's Reply Brief in support of their Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system which will send notification of such filings(s) to the following: Benjamin Gideon, Esq.

*/s/Edward R. Benjamin, Jr., Esq.*
Thompson & Bowie, LLP
Three Canal Plaza
Portland, ME 04112
(207) 774-2500
ebenjamin@thompsonbowie.com