UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| STEPHEN PARKER, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | **CIVIL CASE NO. CV-06-129-GZS** |
| v. | ) | |
| | ) | |
| | ) | |
| CITY OF SOUTH PORTLAND, et al., | ) | |
| | ) | |
| Defendants | ) | |

**DEFENDANTS CITY OF SOUTH PORTLAND, SOUTH PORTLAND POLICE
DEPARTMENT, EDWARD GOOGINS, KEVIN GERRISH, JEFFREY CALDWELL,
AND TODD BERNARD'S RESPONSE TO PLAINTIFF'S
STATEMENT OF ADDITIONAL MATERIAL FACTS**

NOW COME Defendants City of South Portland, South Portland Police Department,
Edward Googins, Kevin Gerrish, Jeffrey Caldwell, and Todd Bernard and present the following
Response to Plaintiff's statement of additional material facts.

1.      Admit.

2.      Admit.

3.      Deny.  This statement should be stricken it requires diagnosis by a medical expert
and not inadmissible lay opinion pursuant to F.R.Evid. 701.

4.      Qualify.  On July 20, 2005, Plaintiff's vehicle was traveling at a high rate of
speed.  *See* Gerrish Affidavit at ¶ 2.

5.      Admit.

6.      Qualify.  The vehicle did not immediately pull over.  While the right turn signal
did come on, the vehicle continued to travel some distance on Sawyer Street.  After about 20
seconds, the vehicle finally pulled over and came to a complete stop.  *See* Gerrish Affidavit at ¶
2; *see also* DVD at 7:49:23 – 7:49:39.

7.      Admit.

8.      Qualify.  Officer Gerrish observed Mr. Parker's vehicle traveling at a high rate of speed.  The dashboard mounted cruiser video system did not activate and begin recording the events until Mr. Gerrish activated his emergency lights.  *See* Gerrish Affidavit at ¶ 2.

9.      Admit.

10.     Qualify.  Parker produced his registration and an expired insurance card, but Officer Gerrish had to ask him three separate times to produce his driver's license.  *See* Gerrish Affidavit at ¶ 3.

11.     Admit.

12.     Admit.

13.     Admit.

14.     Deny.  The cited testimony does not support the factual allegation contained in Plaintiff's Statement of Additional Facts at ¶ 14 (hereinafter "SAF") and as a result Plaintiff's SAF ¶ 14 shall be stricken pursuant to F.R.Civ.P. 56(e).  Officer Gerrish instructed Parker on how to perform the tests and Parker attempted to perform the tests.  *See* Gerrish Deposition at p. 52 (lines 14-20).  Additionally, the cited testimony does not support that "at first, Parker was standing with his hands in his pockets.  He later stood with his arms crossed" and as a result that portion of Plaintiff's SAF shall be stricken pursuant to F.R.Civ.P. 56(e).

15.     Admit**.**

16.     Qualify.  Officer Gerrish testified that there were a number of facts that showed he was impaired and that the evidence was part of the totality of the circumstances.  *See* Gerrish Deposition at pp. 49 (line 13) – 50 (line 7).

17.     Qualify.  Defendants Admit that Officer Gerrish asked Parker to recite a portion of the alphabet and also to count backwards from 69 to 53, but Deny that the deposition testimony cited in support of Plaintiff's SAF ¶ 17 supports those allegations.  The cited testimony supports that Officer Gerrish asked Parker to repeat a sequence of numbers but does not support that he required Parker to recite the alphabet.

18.     Qualify.  The deposition testimony cited in support of Plaintiff's SAF ¶ 18 supports that Parker failed the numbers test but does not address the alphabet test and as a result, Plaintiff's SAF ¶ 19 shall be stricken pursuant to F.R.Civ.P. 56(e).

19.     Admit.

20.     Qualify.  Defendants' admit that while Officer Gerrish was instruction Parker on the on-leg stand, Parker turned to his left to look at Caldwell but deny that the cited deposition testimony of Caldwell as well as the DVD at 7:56:01 support the factual allegation contained in Plaintiff's SAF ¶ 20 and as a result, that portion of Plaintiff's SAF ¶ 20 shall be stricken pursuant to F.R.Civ.P. 56(e).  Additionally, Officer Gerrish testified Parker gave Officer Caldwell the middle finger and said "fuck you," and that Officer Caldwell was not making any communication or statement towards Mr. Parker.  *See* Gerrish Deposition at pp. 55 (line 8) – 56 (line 14).

21.     Admit.

22.     Qualify.  During the HGN test (the first test performed by Officer Gerrish), he explained to Mr. Parker that Officer Caldwell was a police officer and that he was there for Officer Gerrish's safety.  *See* Gerrish Deposition at pp. 49 (lines 10-12) and 55 (lines 16-20).

23.     Qualify.  From 7:56:06 – 7:56:36, Parker can be seen talking and gesturing to Officer Gerrish.  Additional at 7:56:36-7:56:37, Parker can be seen stomping his left foot up and down. *See* DVD at 7:56:36-7:56:37.

24.     Qualify. Defendants Admit that Parker continued to glance at Officer Caldwell but deny that he performed the single-leg raise a second time.  After numerous instructions from Officer Gerrish, Parker failed the test miserable, hopping around on one leg and then throwing his hands in the air.  *See* Defendants' SMF at ¶¶ 66-85; *see also* record citations therein.

25.     Deny.  The deposition testimony cited in support of Plaintiff's factual allegation contained in Plaintiff's SAF ¶ 25 does not support the allegation and shall be stricken pursuant to F.R.Civ.P. 56(e).  Additionally, the portion of Gerrish's deposition cited in support of ¶ 25 specifically states that Parker was hopping around, had difficulty maintaining his balance and had done quite poorly.  *See* Gerrish Deposition at p. 51 (lines 3-7).  Parker himself testified that he did not stand on one foot for a period of time and that he could not perform the test.  *See* Parker Deposition at pp. 43 (line 20) – 44 (line 3).

26.     Admit.

27.     Admit.

28.     Admit.

29.     Admit.

30.     Qualify.  Parker placed his hands on the vehicle and said something to the effect "do what you gotta do," but in response to Officer Gerrish's request that he turn around and answer an additional question, Parker looked at Caldwell and said "fuck you" while showing him the middle finger.  *See* Defendants' SMF at ¶¶ 86-88; *see also* record citations contained therein.

31.     Qualify.  Parker testified that he put himself in the most defenseless position, like you see on TV.  *See* Parker Deposition at p. 45 (lines 17-20).  The remaining allegations contained in Plaintiff's SAF ¶ 29 are not supported by the record citation and as a result should be stricken in accordance with F.R.Civ.P. 56(e).

32.     Qualify.  Gerrish testified that Parker seemed frustrated with his inability to perform the one-leg raise test.  *See* Gerrish Deposition testimony at p. 53 (lines 5-11).

33.     Deny.  The deposition testimony cited in support of Plaintiff's SAF at ¶ 31 does not support the factual allegation that Gerrish interpreted Parker's posture as he was submitting to arrest.  At p. 48 (lines 9-16) Officer Gerrish testified that he took the posture as Parker was frustrated and he thought he was going to be arrested.  *See* Gerrish Deposition at p. 48 (lines 6-11).  Officer Garrish further testified that the particular posture Parker assumed is a posture used mostly on TV.  *Id.* at (lines 12-16).

34.     Admit.

35.     Admit.

36.     Deny.  The testimony cited in support of Plaintiff's SAF ¶ 36 doe not support the factual allegation contained in ¶ 36 and as a result should be denied.  Chief Googins testified that Officer Gerrish "probably" had enough to arrest him, but more was needed in order for Officer Gerrish to feel comfortable in making the arrest.  *See* Googins Deposition at p. 77 (lines 14-17).  Officer Gerrish testified that he felt there was a need to ask Parker additional questions.  *See* Gerrish Deposition at p. 48 (lines 17-25).  Additionally, Officer Coldwell testified that it was Officer Gerrish's scene and that he could assume why Officer Gerrish did not arrest him.  *See* Caldwell Deposition at p. 11 (lines 1-8).

37.    Deny.  Officer Gerrish testified that Officer Caldwell was not making any statement toward Parker, that all communication was coming from Gerrish.  *See* Gerrish Deposition at p. 56 (lines 9-17).  Officer Caldwell testified that the command for Parker to turn back around and face Officer Gerrish did not come from him.  *See* Caldwell Deposition at pp. 11 (line 21) – 12 (line 2).

38.    Deny.  Officer Gerrish testified that Officer Caldwell was not making any statement toward Parker, that all communication was coming from Gerrish.  *See* Gerrish Deposition at p. 56 (lines 9-17).  Officer Caldwell testified that the command for Parker to turn back around and face Officer Gerrish did not come from him.  *See* Caldwell Deposition at pp. 11 (line 21) – 12 (line 2).

39.    Admit.

40.    Qualify.  The Gerrish's deposition testimony cited in support of Plaintiff's SAF ¶ 40 supports only the allegation that Parker stuck his middle finger at Caldwell and does not support the remainder of the allegations contained in ¶ 40.  Both Officer Gerrish and Caldwell testified that Parker said "fuck you" to Officer Caldwell and gave him his middle finger.  *See* Gerrish Deposition at p.44 (lines 13-17); Caldwell Deposition at p. 12 (lines 9-12).

41.    Admit.

42.    Qualify.  Officer Caldwell, dressed in civilian clothing with his badge on a chain around his neck which was plainly visible, arrived as back-up during Officer Gerrish's administration of the HGN test, at which point Officer Gerrish informed Parker Caldwell was an officer.  *See* Defendants' SMF at ¶¶ 59-62; *see also* record citations thereto.

43.    Admit.

44.    Admit.

6

45.    Qualify.  At the point this testimony refers to, Parker had not yet been told he was under arrest and is not the act of arm crossing done later by Plaintiff after he was arrested. See Gerrish Dep. at pp. 44 (line 24) – 45 (line 19).

46.    Qualify.  The testimony is that there was not a fear of "imminent" harm.

47.    Admit.

48.    Admit.

49.    Deny.  Plaintiff's SAF ¶ 49 does not contain a "material fact" as defined by F.R.Civ.P. 56 (c) but rather contains counsel's legal theories, arguments and characterizations and as a result shall be stricken.  Additionally, the deposition testimony cited in support of Plaintiff's SAF ¶ 49 does not support any of the allegations contained in ¶ 49 as required by F.R.Civ.P. 56(c) and as a result SHOULD BE STRICKEN.

50.    Deny.  The DVD portions cited in support of Plaintiff's SAF ¶ 50 do not support the factual allegations of SAF ¶ 50 as required by F.R.Civ.P. 56(e) and as a result shall be stricken.  DVD at 7:57:22-7:57:23 show that Gerrish approached Parker and took hold of his left arm.  *See* DVD at 7:57-22-7:57:23.  Additionally, Officer Gerrish testified that he attempted to uncross Parker's arms by his left hand on Parker's left arm.  *See* Gerrish Deposition at p. 57 (lines 1-2).

51.    Deny.  The deposition testimony cited in support of Plaintiff's SAF ¶ 51 does not support the factual allegation contained in ¶ 51 in accordance with F.R.Civ.P. 56(e) and as a result shall be stricken.  The deposition testimony cited states that Parker turned around, not that Officer Gerrish told him to uncross his arms.  *See* Parker Deposition at pp. 52 (line 17) - 53 (line 6) & 103 (lines 9-12).

52.    Admit.

53.     Admit.

54.     Admit.

55.     Qualify.  Officer Gerrish attempts to pull Parker's arms down and eventually Parker can be seen unfolding his arms with his hands in a clenched fist fashion.  *See* Defendants' SMF at ¶¶ 95-110; *see also* record citations thereto.

56.     Deny.  Plaintiff's SAF ¶ 56 does not contain a "material fact" as defined by F.R.Civ.P. 56 (C) but rather contains Plaintiff's counsel's legal theories, argument and characterization of the evidence and as a result Plaintiff's SAF ¶ 56 should be stricken.

57.     Deny.  *See* Defendants' SMF at ¶¶ 103-108; *see also* records citations thereto. Additionally, Officer Gerrish testified that prior to Parker turning around he handed Caldwell his handcuffs and informed Parker that if he did not comply he would be tased.

58.     Admit**.**

59.     Deny.  The record citations contained in Plaintiff's SAF ¶ 59 do not support the factual allegations contained in SAF ¶ 59 as required by F.R.Civ.P. 56(e) and as a result Plaintiff's SAF ¶ 59 shall be stricken.  Parker's cited deposition testimony states that Caldwell told him to turn around and face the back of the truck and Gerrish's Deposition testimony contains a question by counsel "did he in fact to that?" and Gerrish's response "he did."  The cited time on the DVD merely shows Parker turning towards the back of the truck.  None of the record citations support the allegation that Parker turned around to submit to arrest a second time.

60.     Admit.

61.     Deny.  S*ee* Defendants' SMF at ¶¶ 106-113; *see also* record citations thereto.

62.     Admit.

63.     Qualify.  Parker testified that he expected that "he" would be arrested.

64.     Admit.

65.     Deny.  *See* Defendants' SMF at ¶¶ 118-121; *see also* record citations thereto. Additionally, Chief Googins was not present at the scene of Parker's arrest but testified that Parker appeared to have his hands behind his back.  *See* Googins Deposition at p. 67 (lines 14-17).

66.     Deny.  Plaintiff's SAF ¶ 66 should be stricken because the record citations do not support the numerous factual allegations contained in ¶ 66.  Additionally, *see* Defendants' SMF at ¶¶ 120-127; *see also* record citations thereto.

67.     Deny.  Plaintiff's SAF ¶ 67 should be stricken because the record citation does not support the factual allegation contained in ¶ 67.  Parker's Deposition testimony states that he was not given any instructions about how he was holding his hands.  *See* Parker Deposition at p. 54 (lines 4-6).  Additionally, *see* Defendants' SMF at ¶¶ 120-127; *see also* record citations thereto.

68.     Qualify.  Chief Googins testified that he could not say that all people put their hands in the same place and that the officer knows how the hands need to be positioned in order to apply handcuffs, not where the hands need to be.  *See* Googins Deposition at pp. 67 (line 18) – 68 (line 7).

69.     Qualify.  Parker testified that he reached around and grabbed one hand with the other hand in order to lock his hands behind his back.  *See* Parker Deposition at p. 53 (lines 10-18).

70.     Admit.

71.     Admit.

72.     Qualify.  Lieutenant Bernard walked into the view of the camera with his taser drawn at 7:57:36.  However, Lieutenant Bernard arrived on his motorcycle during the one-leg stand test at 7:56:40.  *See* Defendants' SMF at ¶ 79; *see also* DVD at 7:56:40.

73.     Admit.

74.     Admit.

75.     Admit.

76.     Qualify.  Defendants admit that Officer Caldwell was attempting to pull Parker's hands apart so that he could complete the handcuffing.  *See* Defendants' SMF at ¶¶ 120-129; *see also* record citations contained therein.  The remainder of Plaintiff's SAF ¶ 76 should be stricken because the record citation does not support it.

77.     Deny.  This paragraph should be stricken because it contains argument, counsel's legal conclusions, and is not a "fact" within the meaning of Local Rule 56(f).  Additionally, *see* Defendants' SMF at ¶¶ 123-136; *see also* record citations thereto.

78.     Admit.

79.     Deny.  This paragraph should be stricken because it contains argument, counsel's legal conclusions, and is not a "fact" within the meaning of Local Rule 56(f).  Additionally, *see* Defendants' SMF at ¶¶ 130-136; *see also* records citations therein.

80.     Qualify.  Officer Caldwell's full testimony was that the moving of Parker's hand forward a couple of inches amounted to a threat of assault against him in that situation.  *See* Caldwell Deposition at pp. 23 (line 23) – 24 (line 10).

81.     Qualify.  Plaintiff's SAF ¶ 81 omits pertinent testimony from both Chief Googins and Officer Caldwell.  Chief Googins further testified at p. 68 (lines 16-24) that moving someone's hands to position them to get them into handcuffs is not unusually put pulling

someone how is holding their hands together apart or having their hand locked around their wrist is more on the unusual side.  Office Caldwell further testified at p. 22 (lines 2-17) that he never saw anyone put their hands together like Parker had his.

82.    Deny.  *See* Defendants' SMF at ¶¶ 134-136; *see also* record citations thereto.

83.    Deny.  This paragraph should be stricken because it contains argument, counsel's legal conclusions, and is not a "fact" within the meaning of Local Rule 56(f). Additionally, Plaintiff's SAF ¶ 83 misstates Officer Gerrish's testimony.  Officer Gerrish testified that he saw Parker's right shoulder come forward and dip down and at the same time he saw Officer Caldwell get up onto his toes and start leaning forward towards Parker.  *See* Gerrish Deposition at p. 64 (lines 5-11).  *See also* DVD at 7:57:42-7:57:44.

84.    Qualify.  Defendants' Admit that Caldwell was pulled off balance by Parker.  The remainder of Plaintiff's SAF ¶ 84 This paragraph should be stricken because it contains argument, counsel's legal conclusions, and is not a "fact" within the meaning of Local Rule 56(f).

85.    Admit.

86.    Admit.

87.    Deny.  This paragraph should be stricken because it contains argument, counsel's legal conclusions, counsel's characterization of the evidence, and is not a "fact" within the meaning of Local Rule 56(f).  Additionally Plaintiff's SAF completely misstates Officer Caldwell's testimony.  Officer Caldwell answered "I don't know" when asked by Plaintiff's counsel if he would have been able to put the handcuff on his right wrist had Parker not been Tased.  As a result, Plaintiff's SAF ¶ 87 should be stricken.

88.    Deny.  *See* Defendants' SMF at ¶¶ 103-126; *see also* record citations thereto.

89.     Deny.  This paragraph should be stricken because it contains argument, counsel's legal conclusions, counsel's characterization of the evidence and is not a "fact" within the meaning of Local Rule 56(f).  Additionally, Plaintiff's counsel omits the duration of Parker's struggle with Officer Caldwell during his attempts to handcuff Parker.  *See* Defendants' SMF ¶¶ 102-134; *see also* record citations thereto.

90.     Deny.  *See* Defendants' SMF at ¶¶ 103-126; *see also* record citations thereto.

91.     Deny.  This paragraph should be stricken because the record citations do not support it.  Parker's deposition testimony cited in support of Plaintiff's SAF ¶ 91 states that it was his understanding he was being arrested for OUI, not at the time he was being Tased, but when he put his hands on his truck for the first time.  *See* Parker Deposition at p. 105 (lines 8-17).  Additionally, at the time he was Tased, Parker was in the process of resisting arrest for operating under the influence of alcohol.  *See* Defendants' SMF at ¶¶ 92-128; *see also* record citations thereto.

92.     Admit.

93.     Deny.  This paragraph should be stricken because it contains argument, counsel's legal conclusions and counsel's characterization of the evidence.  The criminal activity that Parker was engaged in at the time of the use of the Taser against him was his physical resistance to being taken into custody for operating under the influence.  *See* Gerrish Affidavit at ¶ 8.

94.     Deny.  Plaintiff's SAF ¶ 94 should be stricken because the record citations do not support it.  Parker's deposition testimony cited in support of Plaintiff's SAF ¶ 94 states that he did not kick, hit, etc. any of the officers.  Gerrish's cited deposition testimony only states that Lucinda Sterling did not feel threatened by Parker.  *See* Defendants' SMF at ¶¶ 130-144; *see also* record citations thereto.

95.    Qualify.  From the point that Parker had a handcuff dangling from his left wrist, he was provided a weapon that could be used against Officer Caldwell.  *See* Defendants' SMF at ¶¶ 129-142; *see also* record citations thereto.

96.    Admit.

97.    Admit.

98.    Deny. Plaintiff's SAF ¶ 98 should be stricken because the record citation does not support the factual allegation contained in ¶ 98.  The testimony cited contains a question by Plaintiff's counsel "Unfortunate, but it is something that you understand comes with the territory, right?" and Officer Gerrish's answer "Yes."

99.    Admit.

100.    Qualify.  It was clear to Sergeant Bernard that at the point Officer Gerrish deployed his Taser that Officer Caldwell was having a difficult time overcoming Mr. Parker's resistance to being handcuffed.  *See* Bernard Affidavit at ¶ 3.

101.    Admit.

102.    Deny.  Plaintiff's SAF ¶ 94 should be stricken because it contains argument, counsel's legal conclusions and counsel's characterization of the evidence and because the record citations do not support the allegation that Plaintiff "was surrounded."  The cited deposition testimony states that three officers were on the scene, not that Plaintiff was surrounded.

103.    Qualify.  Defendants admit that Officer Gerrish is taller and heavier than Plaintiff, but Officer Caldwell, the officer actually trying to handcuff Plaintiff, is smaller than Plaintiff, by Plaintiff's own admission.  See Defendants' SMF at ¶ 148 and record citations therein.

104.    Deny.  *See* Defendants' SMF at ¶¶ 95-136; *see also* record citations thereto.

105.    Qualify.  *See* Defendants' SMF at ¶¶ 129-142; *see also* record citations thereto.

106.    Admit.

107.    Deny.  *See* Defendants' SMF at ¶¶ 95-135; *see also* record citations thereto.

108.    Qualify.  From the point that Parker had a handcuff dangling from his left wrist, he was provided a weapon that could be used against Officer Caldwell.  *See* Defendants' SMF at ¶¶ 129-142; *see also* record citations thereto.

109.    Admit.

110.    Deny.  This paragraph should be stricken because it contains argument, counsel's legal conclusions and counsel's characterization of the evidence.  Additionally, *see* Defendants' SMF at ¶¶ 93-142; *see also* record citations thereto.

111.    Admit.

112.    Qualify.  Officer Gerrish observed Parker's right shoulder come forward and dip down and at the same time he saw Officer Caldwell start to come off his tippy toes and start leaning forward toward Parker's right shoulder.  *See* Gerrish Deposition at ¶ 64 (lines 7-11).

113.    Deny.  This paragraph should be stricken because it contains argument, counsel's legal conclusions and counsel's characterization of the evidence.  Plaintiff's counsel omits Officer Gerrish's testimony from p. 63 (lines 16-19) which states Gerrish saw Parker's left hand release his right hand.

114.    Qualify.  Officer Gerrish testified that there are occasions where subjects will flinch or tense up as they put handcuffs on them.  *See* Gerrish Deposition at p. 60 (lines 2-5).

115.    Admit.

116.    Qualify.  Plaintiff's counsel mischaracterized Officer Gerrish's testimony. Officer Gerrish testified that it's a little awkward and uncomfortable for people.  *See* Gerrish

Deposition at p. 60 (lines 11-12).  Plaintiff's SAF ¶ 116 contains counsel argument and characterization of the evidence and as a result should be stricken.

117.    Qualify.  Plaintiff's counsel mischaracterized Officer Gerrish's testimony. Officer Gerrish testified that it is not unusual for a larger person to have some difficulty getting their hands in exactly the position they need.  *See* Gerrish Deposition at p. 60 (lines 21-25). Plaintiff's SAF ¶ 117 contains counsel argument and characterization of the evidence and as a result should be stricken.

118.    Admit.

119.    Admit.

120.    Deny.  Plaintiff's SAF ¶ 120 should be stricken because it contains argument, counsel's legal conclusions and counsel's characterization of the evidence and because the record citations do not support the allegation that Parker did not evade arrest by flight.

121.    Deny.  Plaintiff's SAF ¶ 121 should be stricken because it contains argument, counsel's legal conclusions and counsel's characterization of the evidence and because the record citations do not support the allegations contained in ¶ 121.  Bernard's cited testimony states that Parker fell to the ground and Parker's own cited testimony states that he remembers being pushed to the ground, not becoming incapacitated and falling to the ground.

122.    Deny.  *See* Defendants' SMF at 149-157; *see also* record citations thereto.

123.    Qualify.  *See* Defendants' SMF at ¶ 153; *see also* record citations thereto.

124.    Qualify.  Sgt. Bernard used his knee to keep Plaintiff's head down to prevent his spitting at the officers, not his boot.  *See* Bernard Affidavit at ¶ 6.

125.    Admit.

126.    Admit.

127.     Admit.

128.     Admit.

129.     Admit.

130.     Admit.

131.     Qualify.  Defendants admit that Taser is marketed as a non-lethal weapon but

Deny the remainder of the "facts" asserted.  This statement SHOULD BE STRICKEN.  There

are no facts asserted within the personal knowledge of the Plaintiff's expert, but rather he cites as

fact statements contained in a paper published by a private organization months after the events

of this case concerning a hotly disputed claim that Taser use can be blamed in the deaths of some

persons against whom it was used.  This kind of private advocacy organization claim is not the

kind of reference work that is normally used by experts offering as fact what is actually just a

reiteration of the opinion of the private organization, and is barred by F.R.Evid. 702.  *See also*

Concepts and Issues Paper of the International Chiefs of Police Association on Electronic

Control Weapons that is an integral part of the IACP's Model Policy of January 2005 on which

Plaintiff's expert claims to rely, but has not produced.  Both documents may be found as

attachments to the Affidavit of Lt. Frank Clark, attached hereto as Exhibit 1.  "Thus, information

presently available suggests that ECW weapons do not create an increased risk of . . . death or

serious injury . . . .  Independent research done by authorities in England and Canada reached a

similar conclusion: [ECW's] are safe enough for police to use, but more research is needed . . . ."

Concepts and Position Paper on Electronic Control Weapons at p. 3.  "Comprehensive

independent studies of ECW deployment in general and safety in particular, such as testing by

Underwriter's Laboratories (UL), have not been conducted as of this writing."  *Id.; see also M.A.*

*A26851062 v. U.S. Immigration & Naturalization Service,* 899 F.2d 304 (4th Cir. 1990)(courts

cannot rely on the omnipresent condemnations of private organizations with their own agendas, such as Amnesty International [or the ACLU], as fact). Additionally, since Plaintiff was not killed, any argument allegedly linking deaths to Taser use is irrelevant to any matter at issue in this case, and/or is prejudicial beyond any possible probative value.

132.    Deny.  This statement SHOULD BE STRICKEN.  There are no facts asserted within the personal knowledge of the Plaintiff's expert, but rather he cites as fact statements contained in a paper published by a private organization months after the events of this case concerning a hotly disputed claim that Taser use can be blamed in the deaths of some persons against whom it was used.  This kind of private advocacy organization claim is not the kind of reference work that is normally used by experts offering as fact what is actually just a reiteration of the opinion of the private organization, and is barred by F.R.Evid. 702.  *See also* Concepts and Issues Paper of the International Chiefs of Police Association on Electronic Control Weapons that is an integral part of the IACP's Model Policy of January 2005 on which Plaintiff's expert claims to rely.  "Thus, information presently available suggests that ECW weapons do not create an increased risk of . . . death or serious injury . . . .  Independent research done by authorities in England and Canada reached a similar conclusion: [ECW's] are safe enough for police to use, but more research is needed . . . ."  *Id*. at p. 3.  "Comprehensive independent studies of ECW deployment in general and safety in particular, such as testing by Underwriter's Laboratories (UL), have not been conducted as of this writing."  *Id.;  see also M.A. A26851062 v. U.S. Immigration & Naturalization Service,* 899 F.2d 304 (4th Cir. 1990)(courts cannot rely on the omnipresent condemnations of private organizations with their own agendas, such as Amnesty International [or the ACLU], as fact).  Additionally, since Plaintiff was not killed, the argument

allegedly linking deaths to Taser use, is irrelevant to any matter at issue in this case, and/or is prejudicial beyond any possible probative value.

133.     Deny.  This statement SHOULD BE STRICKEN.  There are no facts asserted within the personal knowledge of the Plaintiff's expert, but rather he cites as fact statements contained in a paper published by a private organization months after the events of this case concerning a hotly disputed claim that Taser use can be blamed in the deaths of some persons against whom it was used.  This kind of private advocacy organization claim is not the kind of reference work that is normally used by experts offering as fact what is actually just a reiteration of the opinion of the private organization, and is barred by F.R.Evid. 702.  *See also* Concepts and Issues Paper of the International Chiefs of Police Association on Electronic Control Weapons that is an integral part of the IACP's Model Policy of January 2005 on which Plaintiff's expert claims to rely.  "Thus, information presently available suggests that ECW weapons do not create an increased risk of . . . death or serious injury . . . .  Independent research done by authorities in England and Canada reached a similar conclusion: [ECW's] are safe enough for police to use, but more research is needed . . . ." *Id*. at p. 3.  "Comprehensive independent studies of ECW deployment in general and safety in particular, such as testing by Underwriter's Laboratories (UL), have not been conducted as of this writing."  *Id.;  see also M.A. A26851062 v. U.S. Immigration & Naturalization Service,* 899 F.2d 304 (4th Cir. 1990)(courts cannot rely on the omnipresent condemnations of private organizations with their own agendas, such as Amnesty International [or the ACLU], as fact).  Additionally, since Plaintiff was not killed, the argument allegedly linking deaths to Taser use, is irrelevant to any matter at issue in this case, and/or is prejudicial beyond any possible probative value.

134.     Deny.  This record citation does not support the fact asserted.

135.    Deny.  This statement SHOULD BE STRICKEN.  There are no facts asserted within the personal knowledge of the Plaintiff's expert, but rather he cites as fact statements contained in a paper published by a private organization concerning a hotly disputed claim which paper, in turn, cites statements from yet another source. This kind of private advocacy organization claim is not the kind of reference work that is normally used by experts offering as fact what is actually just a reiteration of the opinion of the private organization, and is barred by F.R.Evid. 702, and the particular statements are hearsay.  *See also M.A. A26851062 v. U.S. Immigration & Naturalization Service,* 899 F.2d 304 (4th Cir. 1990)(courts cannot rely on the omnipresent condemnations of private organizations with their own agendas, such as Amnesty International, as fact).

136.    Deny.  This statement SHOULD BE STRICKEN.  There are no facts asserted within the personal knowledge of the Plaintiff's expert, but rather he cites as fact statements contained in a paper published by a private organization concerning a hotly disputed claim which paper, in turn, cites statements from yet another source. This kind of private advocacy organization claim is not the kind of reference work that is normally used by experts offering as fact what is actually just a reiteration of the opinion of the private organization, and is barred by F.R.Evid. 702, and the particular statements are hearsay.  *See also M.A. A26851062 v. U.S. Immigration & Naturalization Service,* 899 F.2d 304 (4th Cir. 1990)(courts cannot rely on the omnipresent condemnations of private organizations with their own agendas, such as Amnesty International, as fact)

137.    Deny.  This statement SHOULD BE STRICKEN.  There are no facts asserted within the personal knowledge of the Plaintiff's expert, but rather he cites as fact statements contained in a paper published by a private organization, citing statements from yet another

source. This kind of private advocacy organization claim is not the kind of reference work that is normally used by experts offering as fact what is actually just a reiteration of the opinion of the private organization, and is barred by F.R.Evid. 702, and the particular statements are hearsay. *See also M.A. A26851062 v. U.S. Immigration & Naturalization Service,* 899 F.2d 304 (4th Cir. 1990)(courts cannot rely on the omnipresent condemnations of private organizations with their own agendas, such as Amnesty International [or the ACLU], as fact).

138.    Deny.  This statement SHOULD BE STRICKEN.  The paper cited by Plaintiff was not in existence on the date of the events giving rise to this lawsuit, being published in October, 2005.  Because of that fact, any suggestions or guidelines for law enforcement agencies contained therein are irrelevant and/or are prejudicial beyond any probative value.  To the extent this policy and training guideline was issued "for consideration of law enforcement" when formulating Taser policy, it has no force of law, especially since it did not exist for the benefit of the municipal defendants in this case at the time of Plaintiff's arrest.  It cannot be used as evidence of "deliberate indifference" under these circumstances and therefore is irrelevant and without any probative value.

139.    Deny.  This statement SHOULD BE STRICKEN.  Plaintiff cites as fact what are clearly statements of opinion contained in a paper published by a private organization concerning a hotly disputed claim which paper, in turn, cites as authority "international standards" promulgated by the U.N.  This kind of private advocacy organization claim is not the kind of reference work that is normally used by experts offering as fact what is actually just a reiteration of the opinion of the private organization, and is barred by F.R.Evid. 702, and the particular statements are hearsay.  *See also M.A. A26851062 v. U.S. Immigration & Naturalization Service,* 899 F.2d 304 (4th Cir. 1990)(courts cannot rely on the omnipresent condemnations of private

organizations with their own agendas, such as Amnesty International, as fact). Additionally, the only legal issue in this case is whether Defendants' conduct violated the Fourth Amendment to the U.S. Constitution and laws of the State of Maine, so the statement is hearsay, and contains opinions that are irrelevant and devoid of probative value. Plaintiff is seeking to have the opinion of Amnesty International have the force of expert opinion, and expert opinion that also invades the province of the court on what is a purely legal question, and not properly the subject of either lay or expert opinion.

140.    Deny. The record citation does not support the statement.

141.    Admit

142.    Admit.

143.    Admit.

144.    Admit.

145.    Admit.

146.    Admit.

147.    Admit.

148.    Admit.

149.    Paragraph 149 is blank.

150.    Admit.

151.    Admit.

152.    Admit.

153.    Admit.

154.    Admit.

155.    Admit.

156.    Admit.

157.    Admit.

158.    Deny.  All uses of force are the subject of training at both the Maine Criminal Justice Academy and at the South Portland Police Department, the Taser is simply one of the tools on which officers are trained before it is issued to them.  While the one day Taser training Plaintiff refers to is involved with the technical aspects of operating the device, its use is still governed by policies on which the officers receive training.  *See* Googins Affidavit at ¶ 2; *see also* Use of Force Policy and Taser Policy, attached as Exhibits 4 and 5 to Plaintiff's Statement of Additional Facts.

159.    Admit.

160.    Admit.

161.    Admit.

162.    Admit.

163.    Admit.

164.    Admit.

165.    Paragraph 165 is blank.

166.    Paragraph 166 is blank.

167.    Paragraph 167 is blank.

168.    Admit.

169.    Admit.

170.    Admit.

171.    Admit.

172.    Admit.

173.   Qualify.  Chief Googins testified that some uses of force have been the subject of discipline but that going back over his 12 year tenure as chief of police he could not recall which, if any, were based on the recommendation of the Review Board.  See Googins Dep. at p. 35 (lines 4-17).

174.   Admit.

175.   Admit.

176.   Admit.

177.   Admit.

178.   Deny.  The cited testimony does not support the statement.

179.   Deny.  The cited testimony only supplies half of the question and answer on this subject.  *See* Googins Deposition at pp. 41 (line1) - 42 (line 17).  The answer was that the least degree of force necessary to effect the arrest was the appropriate level.

180.   Deny.  This statement SHOULD BE STRICKEN because it does not assert a fact but contains only the opinion and characterization of the deponent's testimony by Plaintiff's counsel and purposefully misstates the deponent's testimony.  Chief Googins, when asked if the South Portland Use of Force Policy's standard was "whatever degree of force is necessary to bring a subject into custody," denied that it was and testified that the policy instead required "the least amount of force necessary to effect the arrest." *See* Googins Deposition at pp. 41(line 1) – 42 (line 17).

181.   Admit.

182.   Qualify.  Defendants admit that the quoted testimony of Sgt. Bernard is a portion of the answer he gave to Plaintiff's counsel in his deposition but it is not the entire testimony in this line of questioning.  The citation to the Ryan affidavit SHOULD BE STRICKEN as it does

nothing more than characterize in his own words a portion of the actual deposition testimony that is cited and in doing so actually twists the answer to support a proposition that it cannot.  *See* Deposition Testimony of Todd Bernard at pp. 21(line 3) -23 (line 5).  In testimony at p. 21 (lines 13-17) Sgt. Bernard directly contradicts the characterization of Mr. Ryan as to what he stated in deposition testimony.

183.    Admit.

184.    Qualify.  Defendants admit that Officer Gerrish has testified that he believes his use of the Taser complied with the South Portland Use of Force Policy as well as its Taser Policy.  The citation to the affidavit of Mr. Ryan SHOULD BE STRICKEN as it does nothing more than characterize in his own words a portion of the actual deposition testimony that is cited.

185.    Deny.  The deponent is not asked and does not refer to "passively resisting" so the record citation does not support the statement.

186.    Admit.

187.    Qualify.  Defendants admit that Officer Gerrish is taller and heavier than Plaintiff, however Plaintiff conceded that, at 5'8" and 220 pounds, he is quite a bit larger than Officer Caldwell, the officer he was actually struggling with as he resisted being handcuffed by Caldwell.  *See* Defendants' SMF at 148 and citations therein.

188.    Deny.  This statement SHOULD BE STRICKEN.  There is nothing in the qualifications stated in Mr. Ryan's affidavit on the subject of tactical training of officers on this topic and therefore his statement would be barred by F.R.Evid. 702.  Additionally, the statement suggests that there is only one universal method of training police officers, though no authority is cited as the source for this universal rule, other than apparently Mr. Ryan himself.  There is also

no evidence in the case that South Portland officers are trained this way.  The statement, even if true, is irrelevant without any of the foregoing being established.

189.    Qualify.  Defendants admit that, for the final few seconds of the encounter there were three officers present, because Sgt. Bernard was just arriving on the scene as Officer Gerrish began his attempt to take Plaintiff into physical custody and had not been there previously. The use of the Taser against Plaintiff took place within a minute of Sgt. Bernard arriving on his motorcycle and occurred as Bernard was just crossing the street to the arrest scene.  *See* Defendants' SMF at ¶¶ 40 & 115 and record citations therein.  Additionally, the statement suggests that there is only one universal method of training police officers, though no authority is cited as the source for this universal rule, other than apparently Mr. Ryan himself. There is also no evidence in the case that South Portland officers are trained this way.  The statement, even if true, is irrelevant without any of the foregoing being established and violative of F.R.Evid. 702.

190.    Deny.  The statement SHOULD BE STRICKEN.  The statement suggests that there is only one universal method of training police officers, though no authority is cited as the source for this universal rule, other than apparently Mr. Ryan himself.  There is also no evidence in the case that South Portland officers are trained this way.  The statement, even if true, is irrelevant without any of the foregoing being established and violative of F.R.Evid. 702.  Fourth Amendment case law allows that with the right to arrest comes the right to use a reasonable degree of force to effect that lawful arrest.  *See Graham v. Connor*, 490 U.S. 386 (1989) which, while mentioning an arrestee's active resistance to being arrested as one of the factors to be considered, relies on the totality of the circumstances faced by the police, including the split-second decision making they must make, in determining whether the Fourth Amendment's

reasonableness requirement is met in any particular case.  The citation to Mr. Ryan's opinion seeks to allow him to provide testimony concerning what standard of law applies, which is not a proper subject of expert opinion, and is barred by F.R.Evid. 702.

191.    Deny.  The citation to the affidavit of Mr. Ryan SHOULD BE STRICKEN as it does nothing more than paraphrase in his own words a portion of the actual deposition testimony, which itself is not provided.

192.    Deny.  The statement SHOULD BE STRICKEN.  The statement suggests that there is only one universal method of training police officers, though no authority is cited as the source for this universal rule, other than apparently Mr. Ryan himself.  There is also no evidence in the case that South Portland officers are trained in exactly this way.  The statement, even if true, is irrelevant without any of the foregoing being established and violative of F.R.Evid. 702. Fourth Amendment case law allows that with the right to arrest comes the right to use a reasonable degree of force to effect that lawful arrest.  *See Graham v. Connor*, 490 U.S. 386 (1989) which, while mentioning an arrestee's active resistance to being arrested as one of the factors to be considered, relies on the totality of the circumstances faced by the police, including the split-second decision making they must do, in determining whether the Fourth Amendment's reasonableness requirement is met in any particular case.  The citation to Mr. Ryan's opinion seeks to allow him to provide what standard of law applies, not a proper subject of expert opinion, and is barred by F.R.Evid. 702.

193.    Deny.  This statement SHOULD BE STRICKEN.  It is a conclusory statement without any indication in the affidavit of Mr. Ryan that he has particular experience or education regarding Taser use to offer such an opinion.  The materials cited as support for this conclusion include materials that an expert would not normally rely upon, such as reports of private

26

organizations such as the ACLU and Amnesty International and model policies that do not have the force of law.  In addition, the IACP Electronic Control Weapons Policy of January 2005 and the accompanying Concepts and Issues Paper both speak of the appropriateness of Taser use against *potentially* violent persons, indicating it is not necessary or even recommended that an officer wait until violence has erupted before its use is sanctioned.  *See* Policy at p. 1 ¶ II, and Paper at 3.  The policy also advises that Tasers should be used early enough in a situation to prevent the incident from escalating to the point where a greater level of force might be necessary.  Paper at p. 3.  This opinion is also irrelevant because Plaintiff is seen in the video, both with Officer Gerrish and Officer Caldwell, actively resisting their attempts to handcuff him.

194.    Qualify.  Only a portion of the Concept and Issues Paper is contained in this citation, though it does appear in the paper as quoted.  But the entire relevant quote goes on to say: "With these cautions in mind, ECW's may generally be deployed consistent with a professionally recognized philosophy of use of force, that is:  use only that level of force that reasonably appears necessary to control or subdue a violent or potentially violent person.  It should also be used early enough in a confrontation or situation to prevent the incident from escalating to a point where a greater level of force might be necessary."  Paper at 3.

195.    Deny.  There is no record citation for this statement and it SHOULD BE STRICKEN.

Dated at Portland, Maine this 6th day of April 2007.

/s/Edward R. Benjamin, Jr.
Edward R. Benjamin, Jr.
Attorney for Defendants
City of South Portland,
South Portland Police Department,
Edward Googins, Kevin Gerrish,
Jeffrey Caldwell, and Todd Bernard

CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2007 I electronically filed Defendants City of South Portland, South Portland Police Department, Edward Googins, Kevin Gerrish, Jeffrey Caldwell and Todd Bernard's Response to Plaintiff's Statement of Additional Material Facts with the Clerk of the Court using the CM/ECF system which will send notification of such filings(s) to the following: Benjamin Gideon, Esq.

/s/Edward R. Benjamin, Jr., Esq.
Thompson & Bowie, LLP
Three Canal Plaza
Portland, ME 04112
(207) 774-2500
ebenjamin@thompsonbowie.com